PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. DAVID LUIS PHILIP, Defendant and Appellant.

No. 2537. Argued July 20, 1925.—Decided July 31, 1925.

1. MURDER—EVIDENCE—BLENDED CRIMES.—If several crimes are intimately related and proof of one of them can not be given without showing all of them, evidence of one or of all of them is admissible in a trial for any of the crimes committed.
2. ID.—DELIBERATION AND PREMEDITATION.—In this case it was held that the manner in which the defendant committed the acts was sufficient to show premeditation and deliberation.

District Court of Humacao, Pablo Berga, J. Judgment of conviction for murder. *Affirmed.*

*Borinquen Marrero Ríos* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Defendant David Luis Philip was found guilty by a jury of murder in the first degree and the lower court sentenced him to suffer death.

In his brief on appeal the appellant assigns the following errors as committed by the lower court:

"1. In allowing witnesses Benedicta López, Eva Mojica, Rosa González and Gregorio García to testify about the crimes committed by the defendant after that committed against Canuta Zenón, inasmuch as the accused was indicted for all of those crimes and to allow such

testimony was to prejudge the accused of said crimes and because such testimony influenced the jury against the defendant.

"2. In permitting witness Eva Mojica to bare her left shoulder and show to the jury the scars of the wounds inflicted on her by the defendant, because that constituted the crime of mayhem for which the defendant was indicted, but for which he was not being tried, and because it influenced the minds of the jury also against the defendant.

"3. In overruling a motion for a new trial."

The first two assignments are based on the same ground and they will be considered together.

[1] In overruling the motion for a new trial and referring to the ground on which the assignments of error are based the trial court summarizes the evidence thus:

"From the evidence it appears that immediately after the defendant's assault upon Canuta Zenón Dávila and dragging her by her hair, with the same machete that he was carrying he assaulted and wounded Eugenia Cancel, a daughter of Canuta; a young son of Eugenia; Eva Mojica; Felipa Neri Martínez whom he killed, and Tomás Sánchez, the husband of Felipa, all of which happened 'within a few minutes,' as was said by witness Benedicta López; and that afterwards the accused entered his room and after putting on his coat and locking the door he left and upon meeting policeman Ramón Ortiz on the road the accused said to him that they had been molesting him for a long time and that if he had found Catalán and Treviño, who were not at home, he would have killed them also. The evidence shows that Catalán was the husband of Eugenia Cancel and that Treviño was another resident of the place."

All of the evidence tends to show, therefore, that besides the commission of the crime charged against him the defendant, a few moments later, and with the same weapon, killed another person and wounded others, and all such later acts, though distinct from the first, are however so intimately related by reason of the short time in which they were committed by the accused that they should be considered as a whole, inasmuch as they are part of the same transaction or of the *res gestae*. This question was clearly

decided by the Supreme Court in the case of *People* v. *Souffront,* 30 P.R.R. 102, wherein Mr. Chief Justice Del Toro said:

"2. The particular act with which the defendant was charged consists in his having assaulted and battered Pedro A. Reinosa with the intent to kill him, inflicting upon him a serious wound in the left lumbar region. Certain witnesses testified that while this act was taking place another person interfered in behalf of Reinosa and then the defendant also stabbed that other person who died as a result of the wounds. The attorney for the defendant objected to the admission of the testimony regarding these facts and the court overruled his objection, the defendant taking an exception to the ruling of the court. At the hearing on this appeal the defendant insisted, without citing any applicable law or jurisprudence, if we remember correctly, that the court had erred in ruling as it did.

"The stabbing of the other person was a distinct act, but it was so closely connected with the act charged in this case that it could well be considered as a part of the *res gestae.* See 22 C. J. 443, 454 *et seq.* The other person came to the rescue of Reinosa. According to Reinosa's version of the facts, when he yelled the other person interfered and said: 'Do not hurt the old man, the old man Reinosa,' and then it seems that the defendant stabbed the other man, saying: 'You' are young, take it yourself.' Souffront was charged with assault and battery with intent to kill and it was proper to prove all of the pertinent circumstances surrounding the act in order to comprehend more certainly the mental condition of the defendant."

The same doctrine is laid down in similar terms in Underhill on Criminal Evidence, page 157, paragraph 88, as follows:

"If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof of testimony, whether direct or circumstantial, of any one of them can not be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme."

[2] Although the third and last assignment of error

which refers to the refusal of the lower court to grant a new trial is based on the questions already discussed, it is further alleged that there was no deliberation, an essential element in the crime of murder in the first degree, and that therefore the verdict was contrary to the evidence.

Going back to the facts it appears that the deceased Canuta Zenón Dávila left her room in a house divided into apartments for different families early in the morning with a pot in her hand and was walking through an alley leading to the street when she was assaulted with a machete by the defendant, who inflicted upon her three wounds, two of three inches each in the back of the occipital region and the other in the frontal bone, which fractured the skull and penetrated the encephalic mass as a result of which she died a few days later. Witness Gregorio García saw when the accused used the weapon on the defenseless woman who tried to escape, but as the accused was holding her whenever she fell and tried to arise "he hit her and again she fell down." Eva Mojica testified that "she saw Canuta bathed in blood and the accused dragging her by her hair; that he held a machete in one hand high up in the air while with the left hand he was holding and dragging her by her hair." Likewise, from their testimony it appears that immediately after leaving Canuta Zenón fatally wounded the accused assaulted other persons whom he met in his way, killing one and seriously wounding others. No witness really said how the aggression started, but if "in order that the crime of murder in the first degree may exist it is sufficient according to our statutes that, among other things, an unlawful death shall have been caused voluntarily, deliberately and premeditatedly," such elements appear from the facts and circumstances in this case. *People* v. *Ortiz et al.*, 18 P.R.R. 803. In that case it was also said that "deliberation and premeditation depend upon the circumstances of the case, and the act of aiming and discharging a firearm at a person and thereby causing his

death is sufficient to constitute premeditation and delibera-
tion notwithstanding the rapidity with which the act may
have been consummated.'' And in the case before us the
manner in which the defendant committed the acts is suffi-
cient to constitute premeditation and deliberation, inasmuch
as without justifiable cause and without any provocation by
the victim the accused not only illegally deprived Canuta
Zenón of her life, but also assaulted other persons who in-
terfered or were met while he was committing the act
charged, killing one of them, and further because it ap-
pears that the accused himself, when arrested, said that
if he had found Catalán and Treviño, two other neighbors,
he would have killed them also. All of the facts of the
case were considered by the jury who seem to have con-
vinced themselves of the intention and motive of the de-
fendant in committing the crime for which he was properly
convicted.

For the foregoing reasons the order of April 9, 1925,
denying a new trial and the judgment of April 13, 1925,
should be affirmed.